IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1999 SESSION



FILED

June 18, 1999

Cecil Crowson, Jr.

Appellate Court Clerk

| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9809-CC-00273 |
| Appellee, | * | DYER COUNTY |
| VS. | * | Hon. R. Lee Moore, Jr., Judge |
| MILDRED MICHELLE MAUPIN, | * | (Aggravated Criminal Trespass) |
| Appellant. | * | |

For Appellant:

C. Michael Robbins, Attorney
46 North Third Street
Suite 719
Memphis, TN 38103
(on appeal)

G. Steven Davis
District Public Defender
208 North Mill Avenue
P.O. Box 742
Dyersburg, TN 38025-0742
(at trial)

For Appellee:

John Knox Walkup
Attorney General and Reporter

Patricia C. Kussmann
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

C. Phillip Bivens
District Attorney General
115 East Market Street, P.O. Box 2005
Dyersburg, TN 38025-2005

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

The defendant, Mildred Michelle Maupin, entered a plea of guilt to aggravated criminal trespass. Tenn. Code Ann. § 39-14-406. The trial court imposed a sentence of eleven months and twenty-nine days and suspended all but one hundred twenty days. In this appeal of right, the defendant complains that the sentence was excessive.

We find no error and affirm the judgment of the trial court.

In 1997, Earl Gatlin and wife, Ruby Gatlin, resided at 1501 Countryman Street in Dyersburg. At that time, Ms. Gatlin was an invalid, confined to a wheelchair, and required constant care. She had been prescribed medication for her pain and kept her prescription bottle at the residence. The defendant, who was not acquainted with the Gatlins, had nonetheless stopped at their residence on at least one occasion and asked to use their restroom. Before her departure, the defendant talked briefly with Mr. Gatlin in the kitchen, where the prescribed medication was stored. Afterwards, the Gatlins discovered that the bottle containing pain medication for Ms. Gatlin was empty and all of the pills were missing. Because the defendant had been their only visitor during the course of the day, the Gatlins suspected that she had stolen the pills.

On November 6, 1997, Lee Crytes, a drug dealer from whom the defendant had obtained drugs on prior occasions, drove her to the Gatlins' residence. When she arrived, she met the Gatlins' daughter, Beverly Fowlkes, who apparently recognized her because of the earlier incident. Ms. Fowlkes ordered her to leave and threatened to swear a warrant for her arrest. Later, after her arrest and indictment, the defendant entered a plea to aggravated criminal trespassing for

2

entering the habitation of the Gatlins on November 6, 1997, without their consent, and recklessly causing them to fear for their safety.

At the sentencing hearing, the defendant maintained that she had returned to the residence only because she had heard that the Gatlins had a car for sale. Mr. Gatlin, who owned a van and pickup truck, did not own a car at that time. The defendant admitted that she had been convicted in March of 1988 for attempting to obtain a controlled substance by fraud and grand theft. She also acknowledged that she had resumed the use of drugs for some four years prior to her arrest in November of 1997.

The record establishes that the defendant has a history of drug abuse and had participated in a drug rehabilitation program several years ago. In November 1997, shortly after this offense, the defendant entered another treatment program for an addiction to drugs.

The trial court found as a single mitigating circumstance that the defendant did not cause or threaten bodily harm. See Tenn. Code Ann. § 40-35-113(1). The trial court also found three enhancement factors: prior history of criminal conduct on the part of the defendant, particularly vulnerable victims due to their age and disability, and the defendant's desire for gratification by her abuse of drugs. See Tenn. Code Ann. § 40-35-114(1), (4), and (7). Because the trial court concluded that the two suspended three-year sentences in 1988 had not been successful, it ordered service of one hundred twenty days of the eleven month, twenty-nine day sentence.

When a challenge is made to the length, range, or manner of service

of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d).

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his or her own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210. State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104, -117, and -302; State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). See State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. Palmer, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Id.

4

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f). The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The defendant argues that because there was no proof that she had actually stolen the prescription in the first instance, the trial court should not have concluded that the offense was committed to gratify the defendant's desire for pleasure or excitement. Tenn. Code Ann. § 40-35-114(7). The defendant complains that the state has failed to meet its burden of proof under State v. Adams, 864 S.W.2d 31 (Tenn. 1993).

Even if the application of that single enhancement factor constituted error, however, it is our view that the prior criminal conduct of the defendant would, standing alone, warrant the imposition of the maximum term. Moreover, there was ample proof that the Gatlins were particularly vulnerable due to their age and physical condition. Because of the defendant's history of drug abuse and the failure of less restrictive measures to achieve rehabilitation, the sentence of incarceration is not, in our view, excessive.

5

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
Joseph M. Tipton, Judge


_____
Thomas T. Woodall, Judge